IN THE UNITED STATES DISTRICT
COURT OF THE DISTRICT OF KANSAS

MARK A. BRUCE,　　　　　　　　　 )
　　　　Plaintiff,　　　　　　　　　 )
　　　　　　　　　　　　　　　　　 )
vs.　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　 )
LAURA KELLY, Governor　　　　　　 )　　　Case No.
of Kansas; WILL LAWRENCE,　　　　 )
Chief of Staff for Governor　　　　　 )
Kelly; and HERMAN T. JONES　　　　 )
Superintendent of the Kansas　　　　 )
Highway Patrol.　　　　　　　　　　 )
　　　　Defendants.　　　　　　　　 )
_____ )

## **COMPLAINT**

The Plaintiff, Mark A. Bruce, states and alleges the following claims for relief against the

defendants, Laura Kelly, Will Lawrence, and Herman T. Jones.

### **JURISDICTION AND VENUE**

1.　　　This is a civil rights case, in part, based upon and arising under 42 U.S.C. §1983

and the law of the State of Kansas.

2.　　　This court has subject matter jurisdiction over the plaintiff's federal claims pursuant

to 42 U.S.C. §1331, since these claims arise under federal statutory law.　 This court has

supplemental jurisdiction over the plaintiff's state-law claims pursuant to 28 U.S.C. §1367, since

the state-law claims are so related to the federal claims that they form part of the same case or

controversy.

3.　　　All of the wrongful acts and practices alleged below were committed within the

State of Kansas, and venue is proper in this court pursuant to 28 U.S.C. §1391(b)-(c).

### **PARTIES**

4.　　　Plaintiff Mark Bruce is the former Superintendent of the Kansas Highway Patrol.

5.     Defendant Laura Kelly is the Governor of Kansas, and she is being sued only in her official capacity.

6.     Defendant Will Lawrence is the Chief of Staff for Governor Kelly.  He is being sued only in his personal or individual capacity.

7.     Defendant Herman T. Jones is the current Superintendent of the Kansas Highway Patrol.  He is being sued in both his personal or individual capacity, and also in his official capacity.

## FACTUAL ALLEGATIONS

8.     The Kansas Highway Patrol ("KHP") is an agency of the State of Kansas, which provides state-wide law enforcement of traffic, criminal, and other laws of Kansas.

9.     The KHP is governed, in part, by K.S.A. 2019 Supp. 74-2113.  Subsection (a) of 74-2113 states in relevant part:

> There is hereby created a Kansas highway patrol.  The patrol shall consist of:  (1) A superintendent, who shall have the rank of colonel and who shall have special training and qualifications for the position; (2) an assistant superintendent, who shall have the rank of lieutenant colonel; and (3) officers and troopers who are appointed in accordance with appropriation acts and as provided in this section.  The superintendent and assistant superintendent shall be within the unclassified service under the Kansas civil service act.  The assistant superintendent shall be appointed by the superintendent from among the members of the patrol, and shall serve at the pleasure of the superintendent.  If a person appointed as superintendent, assistant superintendent or major is a member of the patrol when appointed, the person in each case, upon termination of the term as superintendent, assistant superintendent or major, respectively, shall be returned to a rank not lower than the rank the person held when appointed as superintendent, assistant superintendent or major.  If the rank is filled at that time, a temporary additional position shall be created in the rank until a vacancy occurs in such rank.  All other officers, troopers, and employees shall be within the classified service under the Kansas civil service act.

10.     The classified service of the State of Kansas is governed by the Kansas Civil Service Act ("KCSA"), K.S.A. 75-2925, et seq.  Pursuant to K.S.A. 75-2949d, a permanent

employee in the classified service may be dismissed only for cause, specifically, "because of deficiencies in work performance," and/or "because of personal conduct detrimental to the state service."

11.     In June of 1989, Mr. Bruce was hired by the KHP as a trooper.  On March 14, 2008, Mr. Bruce was promoted to the position of Major in the KHP.  Thereafter, pursuant to K.S.A. 75-2946, he served a probationary period of six months in that position.  Consequently, he attained permanent status as a Major in the classified service.

12.     On April 2, 2015, Mr. Bruce was appointed by then-Governor of Kansas, Sam Brownback, to serve as the Superintendent of the KHP, at the pleasure of the governor.

13.     In November of 2018, Laura Kelly was elected as the Governor of Kansas.  As Governor-elect, Ms. Kelly announced that Mr. Bruce would remain as the Superintendent of the KHP.

14.     On March 28, 2019, Mr. Bruce was summoned to the office of Governor Kelly's chief of staff, Will Lawrence, for a meeting.  During this meeting, Mr. Lawrence told Mr. Bruce that he was not going to be retained as Superintendent of the KHP, and that "we need you to resign."  After discussing this topic further, Mr. Bruce told Mr. Lawrence that he would resign. Mr. Lawrence then handed Mr. Bruce a pre-prepared resignation letter, which stated:

> Dear Will:
>
> This letter is to advise you that I hereby resign my position as Superintendent of the Kansas Highway Patrol, effective April 6, 2019.
>
> Sincerely,
>
> Mark A. Bruce

Mr. Bruce signed this resignation letter, and then handed it back to Mr. Lawrence.

15.     Mr. Lawrence then handed Mr. Bruce a pre-prepared letter dated March 18, 2019

and signed by Mr. Lawrence.  This letter stated in relevant part:

> This letter is to confirm receipt and acceptance of your resignation
> from your position as the Superintendent of the Kansas Highway
> Patrol (KHP), effective April 6, 2019.  Effective immediately, you
> are relieved of all duties and authority and are being placed on
> administrative leave until the effective date of your resignation.
>
> You are to surrender all weapons on your person and turn over any
> other State of Kansas devices, equipment or property in your
> immediate possession.  Your computer access and security badge
> have been inactivated.  Please make arrangements with KHP staff to
> return all other State of Kansas devices, equipment, or property prior
> to <u>the effective date of your termination.</u>
>
> ….
>
> Should you have any questions about your benefits, leave, <u>final pay</u>
> <u>warrant</u> or other personnel matters while on paid administrative
> leave, please feel free to contact Susan Pfannenstiel….
>
> Thank you for your service to the State of Kansas.  I wish you
> success in <u>your future endeavors.</u>

(Emphasis added.)

16.     During the meeting on March 28, 2019, Mr. Lawrence never discussed with Mr.

Bruce the option of returning Mr. Bruce to his former rank of Major, as required by K.S.A. 2019

Supp. 74-2113.  Based on the conversation between Mr. Lawrence and Mr. Bruce on March 28,

and also the language of the letter from Mr. Lawrence to Mr. Bruce dated March 28, Mr. Bruce

understood and believed that he was being dismissed from all employment with the KHP.

Consequently, on March 29, 2019, Mr. Bruce initiated email communications with Mr. Lawrence

regarding his retirement from the KHP.  Mr. Bruce initiated these communications because he

understood and believed that he had no other choice but to retire from the KHP.

17.     On April 2, 2019, Mr. Bruce submitted a letter of retirement to Governor Kelly, with a copy to Mr. Lawrence.  This letter stated in relevant part:

> This letter serves as notice that I will retire from the Kansas Highway Patrol effective May 1, 2019.  My last day on the payroll will be April 8, 2019.
>
> ….
>
> I am proud to have had the honor to serve and lead the Kansas Highway [Patrol] for the past 30 years.  I wish the Agency and its employees nothing but the best in the future.

18.     On January 27, 2020, pursuant to the Kansas Open Records Act, Mr. Bruce requested a list of all email accounts for all current employees of the KHP maintained @ks.gov.  This list was a public record, and therefore the KHP provided the list to Mr. Bruce.

19.     The email accounts for all current employees of the KHP, which are maintained @ks.gov, are owned and controlled by the State of Kansas.  In addition, these emails accounts are primarily used by the employees of the KHP to conduct official business, and to interact with the public.  Furthermore, these emails accounts are open for, and compatible with, expressive activity.

20.     On April 3, 2020, Mr. Bruce sent emails to six employees of the KHP to their email accounts maintained @ks.gov.  Most of these six employees were management-level employees of the KHP, including the Superintendent, Mr. Jones.  In all of the emails which Mr. Bruce sent on April 3, he expressed his viewpoints and opinions regarding matters of public concern, namely, the past and present operation of the KHP, including incidents of actual or potential wrongdoing, impropriety, or malfeasance.  For example, in his email to Mr. Jones, Mr. Bruce stated:

> Since being appointed superintendent, you have consistently and constantly dishonored the position and the Patrol by engaging in unethical, immoral and illegal behavior.  You have betrayed the oath of office and the badge you wear.

21.     Later in the day on April 3, 2020, the General Counsel for the KHP, Luther L. Ganieany, Jr., sent an email to Mr. Bruce's attorney, at the direction of Mr. Jones.  Mr. Ganieany's email referenced the emails which Mr. Bruce had sent earlier in the day, and then stated in relevant part:

> Such email communications from him directly with our employees is unwanted and disruptive to the working environment of the Patrol.
>
> As a precaution, we are in the process of requesting the email address he sent these emails from blocked by the Kansas Office of Information Technology Services in order to prevent further harassment of our employees.  Additionally, please advise Mr. Bruce that any further unsolicited communications of a similar nature from him and directed to employees of the Patrol will be considered harassment as defined by K.S.A. 21-2606 and the appropriate referral will be made.

22.     On or before April 30, 2020, the Kansas Office of Information Technology blocked Mr. Bruce from sending emails to all email accounts for all current employees of the KHP maintained @ks.gov.  This action was taken at the request of the KHP and at the direction of Mr. Jones.

23.     On May 28, 2020, Mr. Bruce sent a letter to Mr. Jones, requesting "that the KHP take measures to allow me to freely communicate, by email, with all members of the agency".  On June 5, 2020, Mr. Ganieany, at the direction of Mr. Jones, sent a letter to Mr. Bruce, stating that "this letter is to advise you that the block we have placed on email communications from [your email account] and addressed to official KHP email addresses will not be rescinded."  Mr. Bruce remains blocked from sending emails to all email accounts for all current employees of the KHP maintained @ks.gov.

## COUNT I:  VIOLATION OF
## MR. BRUCE'S CONSTITUTIONAL
## RIGHT OF DUE PROCESS
## BY GOVERNOR KELLY

24.     Paragraphs 1-23 above are incorporated into Count I by reference.

25.     The Fourteenth Amendment to the United States Constitution prohibits the State of Kansas from depriving Mr. Bruce of a property interest without due process of law.  Mr. Bruce's constitutional right of due process is further protected by 42 U.S.C. §1983.

26.     Mr. Bruce had a protected property interest in his continued employment by the KHP, pursuant to K.S.A. 74-2113(a).  Specifically, under K.S.A. 74-2113(a), when Mr. Bruce's term as the Superintendent of the KHP was terminated on March 28, 2019, he was entitled to be returned to permanent status in the classified service as a Major in the KHP.  As a Major with permanent status, Mr. Bruce could not be terminated from his position without just cause, pursuant to K.S.A. 75-2949d.

27.     Governor Kelly, acting under color of state law and in conjunction with Mr. Lawrence, caused Mr. Bruce to be deprived of a property interest without due process of law on March 28, 2019, when she failed to return Mr. Bruce to the rank of Major in the KHP with permanent status, as unequivocally mandated by K.S.A. 74-2113(a).

28.     Mr. Bruce's retirement from the KHP subsequent to March 28, 2019, was effectively involuntary because it was caused by duress or coercion.  Specifically, under the totality of the circumstances, Mr. Lawrence's conduct on March 28, 2019, effectively deprived Mr. Bruce of free choice, and caused Mr. Bruce to reasonably believe that he had no choice but to retire from the KHP.  Consequently, Mr. Bruce's retirement amounted to a constructive dismissal from employment.

29.     Reinstatement of employment is a form of prospective equitable relief which is available under 42 U.S.C. §1983.

Wherefore, pursuant to the Fourteenth Amendment and 42 U.S.C. §1983, Mr. Bruce prays for judgment in the form of prospective equitable relief against Governor Kelly, in her official capacity, enjoining her to reinstate Mr. Bruce to employment with the KHP at the rank of Major with permanent status.  In addition, pursuant to 42 U.S.C. §1988, Mr. Bruce further requests an order awarding him reasonable attorney fees, and the costs of this action.

### COUNT II:  VIOLATION OF MR. BRUCE'S CONSTITUTIONAL RIGHT OF DUE PROCESS BY MR. LAWRENCE

30.     Paragraphs 1-29 above are incorporated into Count II by reference.

31.     The Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983 prohibit any person, acting under color of state law, from depriving Mr. Bruce of a property interest without due process of law.

32.     Mr. Bruce had a protected property interest in his continued employment by the KHP, pursuant to K.S.A. 74-2113(a).  Specifically, under K.S.A. 74-2113(a), when Mr. Bruce's term as the Superintendent of the KHP was terminated on March 28, 2019, he was entitled to be returned to permanent status in the classified service as a Major in the KHP.  As a Major with permanent status, Mr. Bruce could not be terminated from his position without just cause, pursuant to KS.A. 75-2949d.

33.     Mr. Lawrence, acting under color of state law, caused Mr. Bruce to be deprived of a property interests without due process of law on March 28, 2019, when he failed to discuss with Mr. Bruce the option of returning Mr. Bruce to the rank of Major in the KHP, as required by K.S.A. 74-2113(a).

34.     In addition, Mr. Lawrence, acting under color of state law, further caused Mr. Bruce to be deprived of a property interest without due process of law subsequent to March 28, 2019, when he caused Mr. Bruce, through duress or coercion, to involuntarily retire from the KHP. Specifically, under the totality of the circumstances, Mr. Lawrence's conduct on March 28, 2019, effectively deprived M. Bruce of free choice, and caused Mr. Bruce to reasonably believe that he had no choice but to retire from the KHP.  Consequently, Mr. Bruce's retirement amounted to a constructive dismissal from employment.

35.     As a result of Mr. Lawrence's deprivation of Mr. Bruce's property interest without due process of law, Mr. Bruce has sustained damages in the form of past and future compensation (including benefits), emotional distress, mental anguish, and loss of enjoyment of life.

36.     In depriving Mr. Bruce of a property interest without due process of law, Mr. Lawrence acted with malice or with reckless indifference to the federally protected rights of Mr. Bruce.  Therefore, Mr. Lawrence is liable for punitive damages.

Wherefore, pursuant to the Fourteenth Amendment and 42 U.S.C. §1983, Mr. Bruce prays for judgment against Mr. Lawrence, in his individual capacity, for damages in excess of $500,000.00, consisting of past and future compensation (including benefits), emotional distress, mental anguish, and loss of enjoyment of life, plus punitive damages, attorney fees, litigation costs, and prejudgment interest.

### COUNT III: TORTIOUS INTERFERENCE WITH MR. BRUCE'S PROSPECTIVE BUSINESS RELATIONS BY MR. LAWRENCE

37.     Paragraphs 1-36 above are incorporated into Count III by reference.

38.     The Kansas Tort Claims Act ("KTCA"), K.S.A. 75-6101, et seq., imposes liability on any governmental employee under circumstances where the governmental employee, if a

private person, would be liable under Kansas law.  Under Kansas common law, a private person is liable for tortious interference with prospective business relations.

39.     Mr. Bruce had a prospective business relation with the KHP with the probability of future economic benefit to Mr. Bruce.  Specifically, after the termination of Mr. Bruce's term as the Superintendent of the KHP, the provisions of K.S.A. 74-2113(a) unequivocally commanded his return to Major in the KHP with permanent status.

40.     Mr. Lawrence had knowledge of Mr. Bruce's prospective business relation with KHP.

41.     Except for Mr. Lawrence's conduct, Mr. Bruce was reasonably certain to have realized his prospective business relation with the KHP.

42.     Mr. Lawrence's conduct was reckless or intentional, malicious, and outside the scope of his employment or authority.  Specifically, on March 28, 2019, Mr. Lawrence failed to discuss with Mr. Bruce the option of returning Mr. Bruce to the rank of Major in the KHP, as required by K.S.A. 74-2113(a).  In addition, Mr. Lawrence caused Mr. Bruce, through duress or coercion, to involuntarily retire from the KHP.

43.     As a result of Mr. Lawrence's wrongful conduct, Mr. Bruce has sustained damages in the form of past and future compensation (including benefits), emotional distress, mental anguish, and loss of enjoyment of life.  In addition, because Mr. Lawrence acted with malice, he is also liable for punitive damages.

Wherefore, pursuant to the KTCA, Mr. Bruce prays for judgment against Mr. Lawrence, in his personal capacity, for damages in the amount of $500,000.00, consisting of past and future compensation (including benefits), emotional distress, mental anguish, and loss of enjoyment of life, plus punitive damages and prejudgment interest.

### COUNT IV:  VIOLATION OF MR.
### BRUCE'S CONSTITUTIONAL RIGHT
### <u>OF FREE SPEECH BY MR. JONES</u>

44.      Paragraphs 1-43 above are incorporated into Count IV by reference.

45.      The First Amendment to the United States Constitution and 42 U.S.C. §1983 prohibit any person, acting under color of state law, from depriving Mr. Bruce of his right of free speech.

46.      The email accounts for all current employees of the KHP, which are maintained @ks.gov, are open for, and compatible with, expressive activity.  Accordingly, these email accounts constitute a public forum.

47.      On April 3, 2020, Mr. Bruce exercised his right of free speech by sending emails to the email accounts of six employees of the KHP, expressing Mr. Bruce's viewpoints and opinions regarding matters of public concern.

48.      On or before April 30, 2020, Mr. Jones, acting under color of state law, caused Mr. Bruce to be blocked from sending emails to the email accounts of all current employees of the KHP maintained @ks.gov.  Mr. Jones blocked Mr. Bruce from sending emails to these email accounts because of the viewpoints expressed by Mr. Bruce in his emails of April 3, 2020.

49.      Mr. Jones deprived Mr. Bruce of his constitutional right of free speech by blocking Mr. Bruce from using a public forum because of the viewpoints which he had expressed. Viewpoint discrimination is prohibited by the First Amendment.

50.      As a result of Mr. Jones' deprivation of Mr. Bruce's right of free speech, Mr. Bruce has sustained actual damages in the form of emotional distress, mental anguish, loss of enjoyment of life, and damage to reputation.  Mr. Jones, in his individual capacity, is liable for these damages.

51.     In depriving Mr. Bruce of his right of free speech, Mr. Jones acted with malice or with reckless indifference to the federally protected rights of Mr. Bruce.  Therefore, Mr. Jones, in his individual capacity, is liable for punitive damages.

52.     The unconstitutional blocking of Mr. Bruce from sending emails to the email accounts of all current employees of the KHP maintained @ ks.gov. is continuous and on-going. Accordingly, Mr. Jones, in his official capacity, should be enjoined to take the necessary steps to remove the blocking of Mr. Bruce from sending emails to the email accounts of all current employees of the KHP maintained @ ks.gov.

Wherefore, pursuant to the First Amendment and 42 U.S.C. §1983, Mr. Bruce prays for judgment against Mr. Jones, in his individual capacity, for damages in excess of $100,000.00, consisting of emotional distress, mental anguish, loss of enjoyment of life, and damage to reputation, plus punitive damages, attorney fees, litigation costs, and prejudgment interest.  In addition, Mr. Bruce prays for injunctive relief against Mr. Jones, in his official capacity, enjoining Mr. Jones to take the necessary steps to remove the blocking of Mr. Bruce from sending emails to the email accounts of all current employees of the KHP maintained @ks.gov.

## DESIGNATION OF PLACE OF TRIAL

The plaintiff requests that Topeka, Kansas, be designated as the place of trial in the above-captioned matter.

## REQUEST FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. Pro. 38, the plaintiff requests a trial by jury on all claims triable to a jury.

Respectfully submitted,

/s/ Alan V. Johnson
Alan V. Johnson, KS #9992
Sloan, Eisenbarth, Glassman,
   McEntire & Jarboe, L.L.C.
534 S. Kansas Ave, Suite 1000
Topeka, Kansas 66603
Telephone      (785) 357-6311
Fax               (785) 357-0152
ajohnson@sloanlawfirm.com