IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARK A. BRUCE,

           Plaintiff,

v.

LAURA KELLY, et al.,

           Defendants.

Case No. 20-4077-DDC

## MEMORANDUM AND ORDER

Before the court is defendants' Motion to Quash (Doc. 55). Defendants seek to quash a subpoena plaintiff served on defendant Governor Laura Kelly, ordering her to testify at trial. For reasons explained below, the court grants the motion. The court assumes familiarity with the factual and legal background of the case, and so it cuts to the heart of the question.

### I.     Legal Standard

Under Federal Rule of Civil Procedure 45, any party subject to a subpoena may move to quash or modify the subpoena. *Consumer Fin. Prot. Bureau v. Integrity Advance, LLC*, No. 21-MC-206-DDC-TJJ, 2022 WL 2791173, at *2 (D. Kan. July 15, 2022). Rule 45(d) requires the court to quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). This motion to quash is slightly peculiar, though, because it's governed by a special test.

Our Circuit has directed courts to apply the extraordinary circumstances test when deciding whether to order a high-ranking public official to testify at trial. *In re Off. of Utah Att'y Gen.*, 56 F.4th 1254, 1264 (10th Cir. 2022). "[H]igh-ranking executive officials should not,

absent extraordinary circumstances, be called to testify or be deposed concerning issues relating to their official duties." *Id.* at 1259.  The extraordinary circumstance test seeks "to protect high-ranking officials from spending an inordinate amount of time tending to pending litigation[.]" *Id.* at 1261 (quotation cleaned up).

The extraordinary circumstances test has four parts:

> [T]he party seeking the deposition of a high-ranking official must show:  (1) the official has first-hand knowledge related to the claim being litigated; (2) the testimony will likely lead to the discovery of admissible evidence; (3) the deposition is essential to the party's case; and (4) the information cannot be obtained from an alternative source or via less burdensome means.[1]

*Id.* at 1264 (quotation cleaned up).  The parties agree that the "extraordinary circumstances" test governs the current issue.

## II.     Analysis

Plaintiff hasn't persuaded the court that he has assembled "extraordinary circumstances" requiring Governor Kelly to testify because he has failed to carry his burden to show that Governor Kelly's testimony is essential to his case.  "Something is 'essential' if it is not only relevant, but '*necessary*.'"  *Id.* (emphasis in original) (quoting *In re United States*, 197 F.3d 310, 314 (8th Cir. 1999)).  To this end, plaintiff must show that Governor Kelly's testimony is "absolutely needed."  *In re U.S. Dep't of Educ.*, 25 F.4th 692, 703 (9th Cir. 2022).

Governor Kelly's testimony isn't essential for plaintiff's sole claim that survived for trial: plaintiff's § 1983 claim asserting that defendants violated his due process rights.  To resolve this claim, the court (with the help of an advisory jury) must answer three questions.  And the court

---

[1] Though this standard speaks explicitly to the *depositions* of high-ranking public officials, the test applies equally to trial testimony.  *In re Off. of Utah Att'y Gen.*, 56 F.4th at 1259 ("[H]igh-ranking executive officials should not, absent extraordinary circumstances, *be called to testify* or be deposed[.]" (emphasis added)).

2

doesn't absolutely need Governor Kelly's testimony to resolve any of these questions. The next few paragraphs describe the questions that the trial will answer.

*First*, as a threshold matter, the court must determine whether plaintiff voluntarily resigned from his position, waiving his due process rights. *See Narotzky v. Natrona Cnty. Mem'l Hosp. Bd. Of Trs.*, 610 F.3d 558, 564 (10th Cir. 2010). If plaintiff didn't voluntarily resign and, instead, was coerced to resign, then plaintiff's due process rights attach. To determine whether plaintiff was coerced to resign, the court asks whether a reasonable person in plaintiff's position would've felt he had no choice but to resign. *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1222 (10th Cir. 2000). Critically, this inquiry doesn't revolve around anything Governor Kelly said to plaintiff. It's undisputed that Governor Kelly delegated the task of dismissing plaintiff to her Chief of Staff, Will Lawrence. So, the court must train its focus on the dismissal meeting between plaintiff and Chief of Staff Lawrence. The court must consider what Mr. Lawrence told plaintiff about his employment options, what plaintiff knew about his options under the governing law, how long plaintiff had to make his decision, and so forth. Indeed, the court's summary judgment decision took a metaphorical magnifying glass to this meeting between plaintiff and Lawrence.

The court, having reviewed all evidence the parties submitted at summary judgment and the parties' briefing on this issue, finds that Governor Kelly's testimony isn't "necessary" or "absolutely needed" for this first inquiry. *In re Off. of Utah Att'y Gen.*, 56 F.4th at 1264 (emphasis, internal quotation marks, and citations omitted). Plaintiff argues that Governor Kelly's testimony is essential because "she can provide critical testimony as to whether she directed or instructed Mr. Lawrence to coerce plaintiff into resigning." Doc. 58 at 3 (citation and internal quotation marks omitted). To be sure, the governing law empowered Governor Kelly

3

alone to dismiss plaintiff from his position as Superintendent, and Governor Kelly decided to dismiss plaintiff.  But it's undisputed that she empowered her Chief of Staff to effectuate this change.  As a consequence, Governor Kelly didn't attend the important meeting.  Plaintiff never spoke to Governor Kelly about her decision to change KHP leadership.  And plaintiff testified that he had no warning that Governor Kelly planned to dismiss him.  The authority Governor Kelly granted Chief of Staff Lawrence doesn't inform the relevant inquiry:  whether a reasonable person would've felt he had no choice to resign based on what Chief of Staff Lawrence told plaintiff in the dismissal meeting.

*Second*, if the court concludes that plaintiff was coerced into resigning, the court's due process inquiry asks whether plaintiff had a constitutionally protected interest.  *See Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 748 (10th Cir. 2013).  Governor Kelly can't proffer testimony about this because Kansas statutes govern this inquiry.  *See Dickeson v. Quarberg*, 844 F.2d 1435, 1437–38 (10th Cir. 1988) (explaining that property interests "arise from independent sources such as state statutes, local ordinances, established rules, or mutually explicit understandings").  And whether plaintiff had a protected interest relies on the first inquiry.  That is, if Governor Kelly, acting through her Chief of Staff, coerced plaintiff into resigning, then plaintiff had a protected interest.  *See* Doc. 43 at 26–27.  As explained above, the court doesn't need Governor Kelly's testimony to decide this question.

*Last*, to resolve plaintiff's due process claim, the court must determine whether defendants afforded plaintiff adequate process to protect his interest.  *Koessel*, 717 F.3d at 748.  To evaluate whether defendants provided plaintiff with sufficient pretermination due process, the court must determine whether Chief of Staff Lawrence—not Governor Kelly—qualified as an impartial tribunal because he conducted the critical meeting.  The court also must determine

4

whether plaintiff received adequate notice.  It's undisputed that plaintiff received no notice before the meeting.  And the court must determine whether the meeting qualified as a pretermination hearing.  Again, because Governor Kelly didn't attend the meeting, she can't help the court answer these questions.  So, Governor Kelly's testimony isn't essential to this due process inquiry either.

In sum, plaintiff has failed to show that Governor Kelly's testimony is essential.  The court notes that plaintiff's treatment of this putative witness bolsters this conclusion implicitly.  He declined to request Governor Kelly's deposition—or some other less intrusive means of discovery—during the discovery phase of this case.  The court thus grants defendants' Motion to Quash (Doc. 55).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion to Quash (Doc. 55) is granted.  By this Order, the court quashes the trial subpoena seeking to compel attendance by Governor Laura Kelly.

**IT IS SO ORDERED.**

**Dated this 22nd day of January, 2024, at Kansas City, Kansas.**

<u>s/ Daniel D. Crabtree</u>
Daniel D. Crabtree
United States District Judge