## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**MARK A. BRUCE**,

       **Plaintiff**,

**v.**

**LAURA KELLY, et al.**,

       **Defendants**.

Case No. 20-4077-DDC

## MEMORANDUM AND ORDER

One of plaintiff Mark Bruce's claims remains for trial:  a § 1983 procedural due process claim against defendants Governor Laura Kelly and Kansas Highway Patrol Superintendent Erik Smith, both sued in their official capacities.  Doc. 37 at 9 (Pretrial Order ¶ 4.a.i.).  In a pretrial submission, plaintiff mentioned that he plans to seek a "back pay" equitable remedy at trial on his due process claim.  The court ordered the parties to brief this issue:  whether plaintiff is entitled to recover back pay as part of equitable relief.  Doc. 54.  Defendants responded, arguing that the Eleventh Amendment bars plaintiff from recovering back pay in this action against state officials—as defendants here are—sued in their official capacity.  Doc. 56 at 1–3.

"In the absence of a waiver, the Eleventh Amendment forbids a suit for damages against a state in federal court."[1]  *Ambus v. Granite Bd. of Educ.*, 995 F.2d 992, 994 (10th Cir. 1993).  "If the Eleventh Amendment applies, it confers total immunity from suit, not merely a defense to

---

[1]  Congress didn't abrogate state sovereign immunity from § 1983 suits when it created the statute.  *Ambus*, 995 F.2d at 994 ("Although Congress did not abrogate state Eleventh Amendment immunity when enacting § 1983, that immunity extends only to the states themselves and to those governmental entities that are arms of the state." (citation and internal quotation marks omitted)).

liability." *Id.* (citation omitted).  So, generally, "the law considers state officials acting in their official capacities to be acting on behalf of the state and immune form unconsented lawsuits under the Eleventh Amendment." *Elephant Butte Irrigation Dist. of N.M. v. Dep't of Interior*, 160 F.3d 602, 607 (10th Cir. 1998) (citations omitted).  There's a narrow exception to this total immunity for state officials, created by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908).  Under *Ex parte Young*, "the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law."  *Green v. Mansour*, 474 U.S. 64, 68 (1985) (citing *Ex parte Young*, 209 U.S. at 155–56).  But the Supreme Court has "refused to extend the reasoning of *Young* . . . to claims for retrospective relief."  *Id.*

Defendants argue that plaintiff's claim for back pay is retroactive relief barred by the Supreme Court's decision in *Edelman v. Jordan*, 415 U.S. 651 (1974).  In *Edelman*, plaintiffs sued two state officials for declaratory and injunctive relief, seeking an award of retroactive public benefits that the state had withheld wrongfully.  *Id.* at 653–54.  The *Edelman* plaintiffs characterized the retroactive public benefits request as "'equitable restitution' instead of damages[.]"  *Id.* at 665.  The Court held that, despite plaintiffs' framing of their relief, the Eleventh Amendment barred payment of such retroactive benefits because "[i]t require[d] payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation[.]"  *Id.* at 668.  Also, the Court found the "retroactive award of monetary relief as a form of 'equitable restitution,' . . . is in practical effect indistinguishable in many aspects from an award of damages against the State."  *Id.*  The award, "to a virtual certainty," would've "be[en] paid from state funds, and not from the pockets of the individual state officials who were the defendants in the action."  *Id.*  So, the *Edelman* Court held, "a federal court's remedial power, consistent with the

Eleventh Amendment, is necessarily limited to prospective injunctive relief, . . . and may not include a retroactive award which requires the payment of funds from the state treasury[.]" *Id.* at 677 (citations omitted).

Defendants argue that *Edelman* applies here, preventing plaintiff from recovering back pay because back pay "constitutes monetary damages barred by the Eleventh Amendment and not prospective equitable relief permitted by *Ex parte Young*." Doc. 56 at 3. Plaintiff disagrees. He argues that he "seeks equitable restitution including enhanced retirement benefits (which, perhaps, is better categorized as front pay, rather than back pay)." Doc. 59 at 2. Plaintiff explains that he "seeks enhanced retirement benefits, to go into effect prospectively, namely, if and when this court orders Mr. Bruce to be reinstated to the classified position of Major in the Kansas Highway Patrol." *Id.* at 2–3 (internal quotation marks and citations omitted).

Trying to support his position, plaintiff relies on *Milliken v. Bradley*, 433 U.S. 267 (1977) (*Milliken II*). There, the district court had issued an injunction that required the state to pay part of the costs to educate students subjected to school segregation in the past. *Id.* at 288–90. The defendant state officials argued that this injunction offended *Edelman* because, they asserted, it was "indistinguishable from an award of money damages against the state based upon the prior misconduct of state officials." *Id.* at 288–89 (internal quotation marks omitted). The Court disagreed, concluding that the district court's order hadn't violated the Eleventh Amendment. The Court distinguished *Milliken*'s order from *Edelman* this way: "The decree to share the future costs of educational components in this case fits squarely within the prospective-compliance exception reaffirmed by Edelman." *Id.* at 289. The challenged decree fell within the confines of *Ex parte Young* because it "require[d] state officials, held responsible for

unconstitutional conduct, . . . to eliminate a de jure segregated school system." *Id.*  Plaintiff argues that his requested relief better resembles *Milliken* than *Edelman*.

In the court's view, whether plaintiff can recover "enhanced retirement benefits" is a complicated issue—more complicated than the parties' papers apprehend.  Plaintiff initially mentioned that he seeks "back pay as an integral part of the equitable remedy."  Doc. 50 at 1.  After defendant responded and invoked *Edelman*, plaintiff changed his theory, at least somewhat.  Attempting to frame his relief to express it in prospective terms, plaintiff now asserts that he seeks "enhanced retirement benefits," which he characterizes as "front pay."  Doc. 59 at 2.  The court holds significant concerns about the viability of plaintiff's theory.  *See Long v. E. N.M. Univ. Bd. of Regents*, No. CIV 13-380, 2015 WL 13665468, at *3 n.1 (D.N.M. Mar. 23, 2015) ("[F]ront pay awards are likely barred by the Eleventh Amendment.") (collecting cases).

The Supreme Court itself has acknowledged the complexity of these issues.  "For Eleventh Amendment purposes, the line between permitted and prohibited suits will often be indistinct:  'The difference between the type of relief barred by the Eleventh Amendment and that permitted under *Ex parte Young* will not in many instances be that between day and night.'"  *Papasan v. Allain*, 478 U.S. 265, 278–79 (1986) (quoting *Edelman*, 415 U.S. at 667) (brackets omitted).  For example, the question of a remedy's effect on the state treasury isn't dispositive— "relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury."  *Id.* at 278.  But "relief that essentially serves to compensate a party injured in the past by the action of a state official, even though styled as something else, is barred by the Eleventh Amendment."  *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 697–98 (3d Cir. 1996) (first citing *Green*, 474 U.S. at 68; then citing *Edelman*, 415 U.S. at 664–68).  "In discerning on which

4

Case 5:20-cv-04077-DDC   Document 67   Filed 01/25/24   Page 5 of 6



side of the line a particular case falls," the Supreme Court has instructed courts to "look to the substance rather than to the form of the relief sought . . . guided by the policies underlying the decision in *Ex parte Young*." *Papasan*, 478 U.S. at 279 (citation omitted).

Plaintiff hasn't provided the court with much substance about his claim. It wasn't spelled out in the Pretrial Order—indeed, it's something of a fugitive in a procedural sense. At this point, the court doesn't know what plaintiff means by "enhanced retirement benefits." Plaintiff doesn't explain how the Kansas Highway Patrol retirement benefits work. Nor does he explain what "enhanced" means or why he claims he's entitled to recover "enhanced" benefits. And he fails to connect these enhanced retirement benefits to his procedural due process right claim. That is, how do enhanced retirement benefits "directly . . . bring an end to a present violation of federal law"? *Id.* at 278.

In sum, the court can't discern from the current record on which side of the "indistinct" Eleventh Amendment line his theory falls. *Id.* To understand what, exactly, plaintiff means by "enhanced retirement benefits," the court needs a fuller factual record. *See Blanciak*, 77 F.3d at 697–98 (finding "front pay" claims "neither prospective nor equitable" in specific context of case). The court thus declines to decide this issue pretrial and will decide this issue based on the evidence presented about plaintiff's enhanced retirement benefits at trial.[2]

**IT IS SO ORDERED.**

---

[2] The court plans to structure the trial this way: (1) start with evidence to the advisory jury about the sole issue assigned to it: whether plaintiff resigned voluntarily or whether defendant Governor Kelly, through her Chief of Staff, coerced plaintiff into resigning, and (2) while the advisory jury deliberates its sole issue, the parties present their remaining evidence to the court. The court believes that any evidence about plaintiff's enhanced retirement benefits belongs in the second phase of the trial.

5

Dated this 25th day of January, 2024, at Kansas City, Kansas.

s/ Daniel D. Crabtree
Daniel D. Crabtree
United States District Judge